# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

CLEMSON UNIVERSITY and              )
THE COLLEGE OF CHARLESTON           )
on behalf of themselves and all     )     C. A. No. 2: 86-2055-2
others similarly situated,          )
                                    )     FILED
              Plaintiffs,           )
                                    )     DEC 18
     vs.                            )
                                    )     ANN A. BIRCH, Clerk
W. R. GRACE & CO., et al.,          )     CHARLESTON, S. C.
                                    )
              Defendants.           )
_____)

MEMORANDUM IN OPPOSITION TO KAISER GYPSUM
COMPANY, INC.'S MOTION TO DISMISS FOR
LACK OF DIVERSITY JURISDICTION

Edward J. Westbrook, Esq.          Daniel A. Speights, Esq.
J. Anderson Berly, III, Esq.       304 Lee Avenue
MOTLEY, LOADHOLT RICHARDSON,        P.O. Box 685
     & POOLE                       Hampton, SC   29924
151 Meeting Street
P. O. Box 1137                     Cameron McGowan Currie, Esq.
Charleston, SC 29401               P.O. Box 7667
                                   Columbia, SC   29202


                     Of Counsel:

Professor Arthur Miller            Herbert B. Newberg, Esq.
Harvard Law School                 Lippincott Building, Suite 200
Langdell West 227                  227 S. 6th Street
Cambridge, MA  02138               Philadelphia, PA  19106


                 Attorneys for Plaintiffs
                 CLEMSON UNIVERSITY and
                 THE COLLEGE OF CHARLESTON, et al.

December 11, 1987

Charleston, South Carolina

423

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . .    i

TABLE OF CASES AND AUTHORITIES  . . . . . . . . . . .    ii

I    INTRODUCTION . . . . . . . . . . . . . . . . . .    1

II   PRESENT STATUS OF ASBESTOS PROPERTY
     LITIGATION   . . . . . . . . . . . . . . . . . .    2

III  ARGUMENT . . . . . . . . . . . . . . . . . . . .    5

     A.   Diversity Jurisdiction Is Proper
          Based On Clemson's Citizenship . . . . . . .    5

          1.   Clemson University Is Not An
               Alter Ego . . . . . . . . . . . . . .     5

          2.   Clemson University Is A Separate
               Municipal Corporation  . . . . . . . .    15

     B.   If One Class Representative Is
          A Citizen, The Presence Of An
          Alter Ego Does Not Destroy Diversity . . . .    16

     C.   Any Defect In A Named Plaintiff
          Can Be Cured By Amendment . . . . . . . . .     18

     D.   Even If Both Plaintiffs Were
          Not "Citizens", Dismissal Would
          Not Be The Solution . . . . . . . . . . . .     18

     E.   There Is An Independent Federal
          Jurisdictional Basis Because Certain
          Defendants Are "Foreign Sovereigns"
          And Other Defendants Can Be Included
          As Pendent Parties  . . . . . . . . . . . .    20

     F.   Kaiser Gypsum's Motion To Dismiss Is
          Primarily A Churning Exercise Since
          There Is No Jurisdictional Question
          About Central Wesleyan College, And
          Clemson And The College Of Charleston
          Could Clearly Be Members Of The
          Central Wesleyan Class  . . . . . . . . . .    23

IV   CONCLUSION . . . . . . . . . . . . . . . . . . .    24

i

## TABLE OF CASES AND AUTHORITIES

I.  CASES                                                    PAGE(S)

Aldinger v. Howard, 427 U.S. 1,
    96 S.Ct. 2413 (1976) . . . . . . . . . . . . .        21

Allstate Insurance Company v. Lumbermen's
    Mutual Casualty Company, 204 F.Supp.
    83 (D.Conn. 1962) . . . . . . . . . . .               18

Anderson County, Tennessee v. United
    States Gypsum, et al.,
    No. CIV-3-83-511 (E.D.Tenn.)
    aff'd. 821 F.2d 1230 (6th Cir. 1987) . . . .           2

Arango v. Guzman Travel Advisors,
    761 F.2d 1527 (11th Cir.)
    cert. denied 474 U.S. 995,
    106 S.Ct. 408 (1985) . . . . . . . . . . .            21

Athens City Board of Education v.
    National Gypsum Co., No. CIV-1-85-355
    (E.D.Tenn. 1986) . . . . . . . . . . . .               3

Atkins v. State Board of Education,
    418 F.2d 874 (4th Cir. 1969) . . . . . . .            19

Brown v. Porcher, 502 F.Supp. 946
    (D.S.C. 1980), aff'd., 660
    F.2d 1001 (4th Cir. 1981) . . . . . . . .             10

Caperton v. Beatrice Pocahontas Coal Co.,
    585 F.2d 683 (4th Cir. 1987) . . . . . . . .          18

Charleston County School District v.
    W. R. Grace & Co., et al.,
    No. 86-CP-10-1516 (S.C. Cir.) . . . . . .              3

City of Clinton v. Moffitt, 812 F.2d 341
    (7th Cir. 1987) . . . . . . . . . . . . .              7

City of Greenville, et al.
    v. W.R. Grace & Co., 640 F.Supp.
    559 (D.S.C. 1986), aff'd. 827
    F.2d 975 (4th Cir. 1987)
    pet. for reh. pending . . . . . . . . . .              2

Coastal Petroleum Co. v. U.S.S. Agri-
    Chemicals, 695 F.2d 1314
    (11th Cir. 1983) . . . . . . . . . .    10

Connelly v. University of Vermont and State
    Agricultural College, 244 F.Supp. 156
    (D.Vt. 1965) . . . . . . . . . . .    8

Cowles v. Mercer County, 74 U.S. 118
    (1868) . . . . . . . . . . . . . .    7, 15

Dameron v. Sinai Hospital, 595 F.Supp.
    1404 (D.Md. 1984);
    aff'd. in part 815 F.2d 975
    (4th Cir. 1987) . . . . . . . . . . .    19

District of Columbia v.
    L. B. Smith, Inc., of Virginia,
    474 F.Supp. 894 (D.D.C. 1979) . . . . . .    16

Dr. John Hopkins v. Clemson
    Agricultural College, 221 U.S. 636,
    31 S.Ct. 654 (1911) . . . . . . . . . . .    5, 6, 8, 9,
                                                 12

Dyson v. Lavery, 417 F.Supp.
    103 (E.D.Va. 1976) . . . . . . . . . . .    8

Edleman v. Jordan, 415 U.S. 651,
    94 S.Ct. 1347 (1974) . . . . . . . . . .    13

Fuller v. Volk, 351 F.2d 323
    (3rd Cir. 1965) . . . . . . . . . . .    20

Goar v. CPV, 688 F.2d 417
    (5th Cir. 1982) . . . . . . . . . . .    21

Gordenstein v. University of Delaware,
    381 F.Supp. 718 (D.Del. 1974) . . . . . .    8

Goss v. San Jacinto Junior College,
    588 F.2d 96 (5th Cir. 1979) . . . . . . .    14

Haas v. Pittsburg National Bank,
    526 F.2d 1083 (3rd Cir. 1975) . . . . . .    20

Hackner v. Guaranty Trust Co., 117 F.2d
    95 (2nd Cir. 1941) cert. denied
    313 U.S. 559 (1941) . . . . . . . . . . .    20

Huber, Hunt, and Nichols v.
    Architectural Stone Co., 625
    F.2d 22 (5th Cir. 1980) . . . . . . . . . .    6, 10

Hughes-Bechtol, Inc. v. West Va. Bd.
    of Regents, 737 F.2d 540 (6th Cir.)
    cert. denied 469 U.S. 1018 (1984) . . . . .    16

Huntsville City Board of Education v.
    National Gypsum Co., et al.,
    No. CV83-325L (Ala. Cir. Nov. 1987) . . . .    3

Illinois v. City of Milwaukee,
    406 U.S. 91, 92 S.Ct. 1385 (1972) . . . . .    7, 15

Independent School District No. 709 v.
    Air-O-Therm Application Co.,
    No. 155716 (Minn. Dist.) . . . . . . . . . .    3

In Re: Johns-Manville Corp.,
    68 B.R. 155 (S.D.N.Y. 1986) . . . . . . . .    4

In Re: Raymark Industries,
    831 F.2d 550 (5th Cir. 1987) . . . . . . . .    3

In Re: School Asbestos Litigation,
    789 F.2d 996 (3rd Cir. 1986),
    cert. denied 107 S.Ct 182,
    318 (1986) . . . . . . . . . . . . . . . . .    1, 3

International Woodworkers v.
    Chesapeake Bay Plywood Corp.,
    659 F.2d 1259 (4th Cir. 1981) . . . . . . .    19

Jacobs v. College of William and Mary,
    495 F.Supp. 183 (E.D.Va. 1980),
    cert. denied 454 U.S. 1033 (1981) . . . . .    16

Kovats v. Rutgers, The State University
    822 F.2d 1303 (3rd. Cir. 1987) . . . . . . .    8, 9, 13

Laird v. Chrysler, 92 F.R.D.
    473 (1981) . . . . . . . . . . . . . . . . .    17

Lexington County School District Five
    v. United States Gypsum Co.,
    No. 82-2072-0 (D.S.C. 1984) . . . . . . . .    2

Loeb v. Trustees of Columbia Township,
    179 U.S. 472, 21 S.Ct. 174 (1900) . . . . .    15

Moor v. County of Alameda,
    411 U.S. 693, 93 S.Ct. 1785 (1973) . . . . .    7

Mt. Healthy City Board of Education
    v. Doyle, 429 U.S. 274, 97 S.Ct.
    568 (1977) . . . . . . . . . . . . . . .    12

Owen Equipment and Erection Co.
    v. Kroger, 437 U.S. 365,
    98 S.Ct. 2396 (1978) . . . . . . . . . . .    17, 22

Patterson v. Ramsey, 413 F.Supp.
    523 (D.Md. 1976) aff'd. on
    other grounds, 552 F.2d 117
    (4th Cir. 1977) . . . . . . . . . . . . .    10

Petty v. Tennessee-Missouri
    Bridge Comm'n., 359 U.S.
    275, 79 S.Ct. 785 (1959) . . . . . . . . .    10

Ram Ditta v. Maryland National Capital
    Park & Planning Commission,
    822 F.2d 456 (4th Cir. 1987) . . . . . . .    7, 9, 10,
    13, 16

Ronwin v. Shapiro, 657 F.2d
    1071 (9th Cir. 1981) . . . . . . . . . . .    16

Runion v. U.S. Shelter, 98 F.R.D.
    313 (D.S.C. 1983) . . . . . . . . . . . .    19

Samuel v. University of Pittsburg, et al.,
    375 F.Supp. 1119 (W.D.Pa. 1974)
    rev'd. on other grounds, 538
    F.2d 991 (3rd Cir. 1976) . . . . . . . . .    8

School District of the City of
    Independence Missouri v.
    United States Gypsum Co., et al.,
    No. CV-8405334 (Mo. Cir. 1986) . . . . . .    2

Soni v. Board of Trustees of the University
    of Tennessee, 513 F.2d at 352
    (6th Cir. 1975) cert. denied
    426 U.S. 919, 96 S.Ct. 2623 (1976) . . . . .    6, 8

South Carolina Electric and Gas v.
    Ranger Construction Company,
    539 F.Supp. 578 (D.S.C. 1982) . . . . . . .    18

Spartanburg County School District Seven
    v. United States Gypsum Co.,
    No. 86-639-14 (D.S.C.), rev'd. 805
    F.2d 1148 (4th Cir. 1986) . . . . . . . . .   2

St. Joseph Hospital v. The Celotex
    Corporation, et al., No. 186-047
    (S.D.Ga. 1986), appeal pending
    No. 86-8140 (11th Cir. 1987) . . . . . . . .   3

The Corporation of Mercer University
    v. National Gypsum Co., et al.,
    No. 85-126-3-MAC (M.D.Ga.),
    appeal pending No. 86-8693 (11th Cir.) . . .   2

Tradigrain Inc. v. Mississippi
    State Port Authority, 701 F.2d
    1131 (5th Cir. 1983) . . . . . . . . . . .   5, 6

Verlinden BV v. Central Bank of Nigeria,
    461 U.S. 480, 103 S.Ct. 1962
    (1983) . . . . . . . . . . . . . . .   22

Welch v. State Dept. of Highways,
    107 S.Ct. 2941 (1987) . . . . . . . . . .   10

Whittenberg v. School District of
    Greenville, 607 F.Supp. 285
    (D.S.C. 1985) . . . . . . . . . . . . . .   20

Williams v. Shipping Corp. of India,
    653 F.2d 874 (4th Cir. 1982)
    cert. denied 455 U.S. 982,
    1025 S.Ct. 1490 (1982) . . . . . . . . . .   21


II.  OTHER AUTHORITIES

Fed.R.Civ.P. 21 . . . . . . . . . . . . . . .   18

Foreign Sovereign Immunities Act
    28 U.S.C. § 1330 . . . . . . . . . . . . .   2, 5, 20,
    22

    28 U.S.C. § 1603(a) . . . . . . . . . . .   20

2 Mealey's Litigation Reports – Asbestos,
    494 (May 8, 1987) . . . . . . . . . . . .   3

2 Mealey's Litigation Reports - Asbestos,
        603 (May 22, 1987) . . . . . . . . . . . . .        3

S.C. Code of Laws § 10-7-10 . . . . . . . . . .        12

S.C. Code of Laws § 1-11-140 . . . . . . . . .        12

S.C. Code of Laws § 59-119-10 (1976) . . . . . .        7, 10, 11

S.C. Code of Laws § 59-119-40 . . . . . . . . .        11

S.C. Code of Laws § 59-119-50 . . . . . . . . .        11

S.C. Code of Laws § 59-119-60 . . . . . . . . .        9, 11, 12

S.C. Code of Laws § 59-119-70 . . . . . . . . .        11

S.C. Code of Laws § 59-119-310 (1976) . . . . . .        15

S.C. Code of Laws § 59-119-510 . . . . . . . .        12

S.C. Code of Laws § 59-119-590 . . . . . . . .        12

Water Pollution Control Act
        33 U.S.C. § 466e . . . . . . . . . . . . . .        14
        23 U.S.C. § 402 . . . . . . . . . . . . . .        14

32A Am.Jur.2d Federal Practice and Procedure
        § 1422 . . . . . . . . . . . . . . . . . . .        15

13B Wright, Miller & Cooper,
        Federal Practice and Procedure, §§ 3602,
        3567.2, 3623 . . . . . . . . . . . . . . . .        10, 15, 22

7 Wright, Miller & Kane,
        Federal Practice and Procedure,
        § 1685 (1986) . . . . . . . . . . . . . . .        18

40 C.F.R. § 61.147 . . . . . . . . . . . . . .        3

S.C. Att'y Gen. Op. (Dec. 8, 1987) . . . . . . .        7, 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

CLEMSON UNIVERSITY and          )
THE COLLEGE OF CHARLESTON        )
on behalf of themselves and all )    C. A. No. 2:  86-2055-2
others similarly situated,       )
                                 )
                Plaintiffs,      )
                                 )
        vs.                      )
                                 )
W. R. GRACE & CO., et al.,       )
                                 )
                Defendants.      )
_____)

CLASS PLAINTIFFS' RESPONSE TO
KAISER GYPSUM'S MOTION TO DISMISS
FOR LACK OF DIVERSITY JURISDICTION

I

INTRODUCTION

This action was instituted on August 1, 1986 as higher
education's counterpart to the class action certified on behalf
of all primary and secondary schools.  In re: School Asbestos
Litigation, 789 F.2d 996 (3rd Cir. 1986) cert. denied 107 S.Ct.
182, 318 (1986).  In its eleventh motion since this case was
filed, Kaiser Gypsum has moved to dismiss, claiming that the two
named plaintiffs are alter egos of the State of South Carolina,
and as such, are not "citizens" of South Carolina for diversity
purposes.

Kaiser Gypsum's motion should be denied.  The United States
Supreme Court, in an opinion ignored by Kaiser Gypsum, has
already held that Clemson University is not an alter ego of the
state.   Diversity jurisdiction is proper based on its

citizenship alone. In addition, Kaiser Gypsum ignores the independent federal jurisdictional basis of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330.

Before discussing these issues in detail, it may be helpful to put this motion ( and Kaiser's motivation) in perspective by examining the status of the asbestos property litigation.

## II

### PRESENT STATUS OF ASBESTOS PROPERTY LITIGATION

Encouraging developments have occurred in the asbestos property damage litigation in 1987. Across the country, building owners are beginning to resolve their claims for reimbursement of asbestos removal costs. There have been ten asbestos property damage trials, with all except one ending ultimately in building owners' favor.[1] But the real progress over the last few months

---

[1] Lexington County School District Five v. United States Gypsum Co., No. 82-2072-0 (D.S.C. 1984) [$675,000.00 mid-trial settlement on $378,000.00 asbestos removal claim in April 1984]; Anderson County, Tennessee v. United States Gypsum, et al., No. CIV-3-83-511 (E.D.Tenn.) [defense verdict 1985] aff'd. 821 F.2d 1230 (6th Cir. 1987); Spartanburg County School District Seven v. United States Gypsum Co., No. 86-639-14 (D.S.C.) [defense verdict in August 1985, rev'd. 805 F.2d 1148 (4th Cir. 1986), plaintiff's verdict of $106,000.00 against USG on warranty retrial, appeal pending]; City of Greenville, et al. v. W.R. Grace & Co., 640 F.Supp. 559 (D.S.C. 1986) [$4.8 million actual and $2 million punitive damage award approved on post-trial motions in June 1986, aff'd. 827 F.2d 975 (4th Cir. 1987), pet. for reh. pending]; The Corporation of Mercer University v. National Gypsum Co., et al., No. 85-126-3-MAC (M.D.Ga.) [$400,000.00 actual and $2 million punitive verdict approved on post-trial motions in April 1986, cross appeals pending No. 86-8693 (11th Cir.)]; School District of the City of Independence Missouri v. United States Gypsum Co., et al., No. CV 8405334 (Mo. Cir. 1986) [$650,000 actual damage verdict approved on post-trial motions; punitive damage verdict vacated, cross appeals pending]; St.

has come through group settlements resolving hundreds of building owners' claims. See eg., 2 Mealey's Litigation Reports-Asbestos, 494 (May 8, 1987) [nationwide multi-million dollar settlement for schools], 2 Mealey's Litigation Reports-Asbestos, 603 (May 22, 1987) [multi-million dollar settlement for Texas schools]. Class actions, with their ability to bring large numbers of claimants into a single forum, promise to be an important vehicle as building owners and defendants struggle to resolve this unprecedented socio-environmental problem. See, In re: School Asbestos Litigation, 789 F.2d at 1009 [noting that providing a settlement opportunity is a legitimate factor in reviewing class certification decision]; cf. In re: Raymark Industries, 831 F.2d 550 (5th Cir. 1987). [Class action settlement of 700 asbestos personal injury claims.]

There is no longer any question that all friable asbestos-containing materials must eventually be removed from buildings. See, 40 C.F.R. § 61.147. The issue of who should pay these costs is, therefore, of enormous importance not only to building

---

Joseph Hospital v. The Celotex Corporation, et al., No. 186-047 (S.D.Ga. 1986) [$500,000.00 actual damages, affirmed on post-trial motions; appeal pending No. 86-8140 (11th Cir. 1987)]; Athens City Board of Education v. National Gypsum Co., No. CIV-1-85-355 (E.D.Tenn. 1986) [$553,000.00 actual damages affirmed on post-trial motions, settled on appeal]; Charleston County School District v. W.R. Grace & Co., et al., No. 86-CP-10-1516 (S.C. Cir.) [settled during pretrial motions, June 2, 1987]; Independent School District No. 709 v. Air-O-Therm Application Co., No. 155716 (Minn. Dist.) [settled during trial, June 2, 1987]; see also Huntsville City Board of Education v. National Gypsum Co., et al., No. CV83-325L (Ala. Cir. Nov. 1987) [granting judgment against U.S.G. for discovery abuse; settled December 7, 1987 for $1.36 million on condition sanctions order be withdrawn].

owners, asbestos companies and their insurers, but to society at large.

This coming year promises to be very important for the asbestos property damage litigation. The Manville Trust for property damage claims is expected to be operational by mid-1988, providing approximately $200 million in initial asbestos abatement assistance to building owners. <u>In re: Johns-Manville Corp;</u> 68 B.R. 155 (S.D.N.Y. 1986) The December 1, 1987 opt-out date for the national school class action, whose certification was upheld on appeal, has now passed. It is widely anticipated that settlement activity there will intensify now that the parameters of the class have been determined.

While different observers will draw different conclusions from these events, one thing can be said with certainty. A large segment of the realistic defendants wishes to deal with these claims on a group, as opposed to individual basis, to lessen transactional costs.

While people of good will on both sides struggle for an equitable solution to the enormous problem of asbestos in colleges and other buildings, a small segment of the defense camp, led by Kaiser Gypsum, is mired in a short-sighted motions campaign. The instant motion typifies such a "forest for the trees" strategy. Kaiser Gypsum claims that neither Clemson University nor The College of Charleston is a proper class representative because both are "alter egos" of South Carolina and, consequently, have no "citizenship" for diversity purposes.

As plaintiffs show below, Kaiser Gypsum, even in its technical arguments, has confused the concept of being a state agency with being an "alter ego" of the state. It also ignores the parallel class action now pending in this Court by Central Wesleyan, a private university as to which there can be no "alter ego" question. Finally, Kaiser Gypsum ignores the alternate basis for jurisdiction -- the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330 -- that renders extended debate over diversity unwarranted.

In any event, as plaintiffs show below, diversity jurisdiction is proper.

### III

#### ARGUMENT

A.    DIVERSITY JURISDICTION IS PROPER BASED ON CLEMSON'S CITIZENSHIP

1.    Clemson University is Not an Alter Ego

For a defendant as transfixed on technicalities as Kaiser Gypsum, it is at least curious that it has avoided all mention of Dr. John Hopkins v. Clemson Agricultural College, 221 U.S. 636, 31 S.Ct. 654 (1911), in which the Supreme Court specifically held that Clemson University is not the alter ego of the State of South Carolina. Kaiser Gypsum makes no effort to address or explain this case which is flatly controlling.[2]

---

[2]Although Hopkins v. Clemson was an eleventh amendment case, courts use essentially the same analysis for the eleventh amendment as for diversity of citizenship. See, e.g., Tradigrain, Inc. v. Mississippi State Port Authority, 701 F.2d

Rather, Kaiser Gypsum asserts as dogma that all public colleges and universities "Are Agencies And Alter Egos Of The State Itself." Kaiser Memo at 2. In support of this "rule", it cites cases which have held a particular college or university to be an alter ego of the State.

This is a complete distortion of the law. Contrary to Kaiser Gypsum's claims, the real "rule" is that every college or university is to be judged on its own facts. Soni v. Board of Trustees of the University of Tennessee, 513 F.2d 347, 352 (6th Cir. 1975), cert. denied 426 U.S. 919, 96 S.Ct. 2623 (1976). While some may be arms of the State, there are also many public colleges and universities which, owing to the history of their creation and development, have retained a degree of separateness that prevents them from being called simply "alter egos" of the State. As noted above, Clemson is a prime example of such an institution which remains sufficiently independent to be termed a "citizen." This is confirmed not only by the Supreme Court decision in Hopkins v. Clemson (which arose, of course, in this Circuit), but also by recent decisions

---

1131, 1132 (5th Cir. 1983) ["the analysis of an agency's [alter ego] status is virtually identical whether the case involves a determination of immunity under the Eleventh Amendment or a determination of citizenship for diversity jurisdiction"]. The Tradigrain case adopted the approach of Huber, Hunt and Nichols, Inc. v. Architectural Stone Co., 625 F.2d 22 (5th Cir. 1980), which had relied on Clemson.

involving analogous universities, other public agencies, and by a close look at the South Carolina Code.

At the outset, it is critical to recognize that not every state agency, instrumentality, municipality or corporate body of a state is its alter ego for diversity purposes. Indeed, municipal corporations have been consistently held to be citizens for diversity purposes.[3] Only when identity with the state is almost complete will an alter ego relationship be found. This rule has been well-settled for many years, see Cowles v. Mercer County, 74 U.S. 118 (1868); Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385 (1972); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785 (1973); City of Clinton v. Moffitt, 812 F.2d 341 (7th Cir. 1987). It has been confirmed once again by the Fourth Circuit only a few months ago. Ram Ditta v. Maryland National Capital Park & Planning Commission, 822 F.2d 456 (4th Cir. 1987) [Park Commission is not an alter ego notwithstanding its status as a state agency]. See also, S.C. Att'y Gen. Op. (Dec. 8, 1987) [S.C. Ports Authority is a state agency but not an alter ego.] (Attached hereto as Exhibit 5.)

This rule applies equally to colleges and universities, which in many cases have maintained sufficient

---

[3]As will be discussed in more detail infra, Clemson University is a municipal corporation. S. C. Code of Laws (1976) § 59-119-310.

separateness to avoid becoming the alter ego of the State. The most recent, significant decision in this area is Kovats v. Rutgers, The State University, 822 F.2d 1303 (3rd Cir. 1987), holding that a "state university" was not an alter ego of the state. As the discussion below will show, the factors that led the Third Circuit to deny alter ego status to Rutgers are also present as to Clemson.

Contrary to Kaiser Gypsum's argument, every college or university stands on its own. Soni v. Board of Trustees, 513 F.2d at 352. In addition to Rutgers, there are numerous other significant examples of colleges which have been held, after reasoned inquiry, to be distinct from the State and not alter egos. See, e.g., Gordenstein v. University of Delaware, 381 F.Supp. 718 (D.Del. 1974) [University of Delaware is not alter ego of the state]; Dyson v. Lavery, 417 F.Supp. 103 (E.D.Va. 1976) [Virginia Polytechnic Institute (V.P.I.) is an independent government agency/instrumentality, and not an alter ego of the state]; Samuel v. University of Pittsburgh, et al., 375 F.Supp. 1119 (W.D.Pa. 1974), reversed on other grounds 538 F.2d 991 (3rd Cir. 1976) [Pittsburgh, Temple and Penn State are not alter egos of the state]; Connelly v. University of Vermont and State Agricultural College, 244 F.Supp. 156, 158-159 (D.Vt. 1965) [colleges are bodies corporate and independent of the state]. See also, Soni v. Board of Trustees, supra.

All of the cases build upon the rationale in Hopkins v. Clemson, but none of them changes its framework. In that case, the United States Supreme Court examined in detail Clemson's relationship with South Carolina and found them distinct entities. Plaintiff, Dr. Hopkins, sued Clemson alleging that his lands had been damaged when a Clemson dike burst. His recovery hinged on proving that Clemson was not an "alter ego" entitled to the sovereign immunity of the State, which he did. The Supreme Court examined the statutory provisions which give Clemson its existence, power and authority. In refusing Clemson the benefit of the State's immunity, the Court found:

> . . . the statute [the progenitor of § 59-119-60] created an entity, a corporation, a juristic person, whose right to hold and use property was coupled with the provision that it might sue and be sued, plead and be impleaded, in its corporate name.

31 S.Ct. at 658

In so ruling, the Court found Clemson to be a separate, distinct and independent entity from the State of South Carolina, not entitled to its sovereign immunity.

Later cases have built upon and refined Clemson by asking additional questions and devising multi-part tests. For example, the Fourth Circuit in Ram Ditta measured four principal factors, while the Third Circuit in the Rutgers

9

case identified nine.[4]   While these formulations differ in
detail, they basically boil down to a simple set of very
practical questions:  Does the entity have a corporate
existence that gives it the power to sue and be sued in its
own name[5], are its debts automatically obligations of the
State Treasury[6], and is the entity designated by law a
municipality or other State subdivision distinct from the
State itself[7].

Measured by these practical standards, Clemson is
not the alter ego of the State of South Carolina.  An
understanding of Clemson's status must begin with the
circumstances and statutory scheme under which it was
established.  Thomas Green Clemson died on April 6, 1888
leaving his last will and testament setting aside property
to establish a college.  See, S.C. Code § 59-119-10 (1976).

---

[4]Other recent lists of factors appear in Coastal Petroleum
Co. v. U.S.S. Agri-Chemicals, 695 F.2d 1314, 1318 (11th Cir.
1983); Patterson v. Ramsey, 413 F.Supp. 523, 529 (D.Md. 1976),
aff'd on other grounds 552 F.2d 117 (4th Cir. 1977); Huber, Hunt,
& Nichols v. Architectural Stone Co., supra.

[5]Petty v. Tennessee-Missouri Bridge Comm'n., 359 U.S. 275,
280-82, 79 S.Ct. 785 (1959); accord: Welch v. State Dept. of
Highways, 107 S.Ct. 2941 n.7 (1987).

[6]According to the Ram Ditta case, this is the most
significant factor.  It was also the critical factor in Judge
Hawkins' decision, which was affirmed by the Fourth Circuit, that
the South Carolina Employment Security Commission does not have
Eleventh Amendment immunity.  Brown v. Porcher, 502 F.Supp.
946 (D.S.C. 1980), aff'd., 660 F.2d 1001 (4th Cir. 1981).

[7]13B Wright, Miller & Cooper, Federal Practice and
Procedure, 3602 n.14.

The college was placed under the management and control of a board of thirteen trustees composed of seven members nominated by Clemson's will, (who have always chosen their own successors), with the remaining six member minority elected by the General Assembly. § 59-119-40. The Board of Trustees is empowered to ". . . make all rules and regulations for the government of the university." § 59-119-50. Of special significance is § 59-119-60 which vividly portrays the separate identity of Clemson:

> Section 59-119-60 Board declared a body politic and corporate; corporate powers; <u>property; investments of funds.</u>
>
> The board of trustees is hereby declared to be a body politic and corporate, under the name and style of Clemson University. It shall have a corporate seal, which it may change at its discretion, and in its corporate name, it may contract for, purchase, and hold property, for the purposes of § 59-119-10 to 59-119-70 and may take any property or money given or conveyed by deed, devise or bequest to said university and hold the same for its use and benefit; <u>provided</u> <u>however</u>, that the conditions of such gifts or conveyances shall in no case be inconsistent with the purposes of § 59-119-10 to 59-119-70 and that the Board shall not by the acceptance thereof incur any obligation on the part of the State. It shall securely invest all funds and keep property which may come into its possession and may sell any of the personal property not subject to the trust and reinvest the same in such a way as it deems best for the interest of said university. It may sue and be sued and plead and be impleaded in its corporate name and may do all things necessary to carry out the provisions of § 59-119-10 to 59-119-70 and may make bylaws for this purpose if it deems necessary.

Thus, under § 59-119-60, Clemson is empowered to:

1. Sue and be sued in its own name;

2. Implead or be impleaded in a court of competent jurisdiction;

11

3.    Contract in its own name;

4.    Acquire, hold title to and dispose of property in its own name;

5.    Be a "body corporate and politic" having all the normal rights, powers, and immunities incident to corporations; and

6.    Accept any property or money, given, conveyed or devised by bequest as long as it does not incur any obligation on the part of the state. § 59-119-60.

In addition, under § 59-119-510 and § 59-119-590, Clemson may issue revenue bonds in its own name, which are not obligations of the state, for the purpose of building construction or improvements. Moreover, less than half of Clemson's yearly operating revenues are provided by the State. (See Affidavit and Exhibits of Jack Wilson, Exhibit 1, 1A and 1B)[8].

Also of significance, Clemson is covered under the South Carolina Insurance Reserve Fund, which operates like a captive insurance company. The Fund assesses premiums on and provides coverage to such organizations as municipalities, school districts, state-affiliated institutions, etc. See, § 10-7-10 et seq. See also, § 1-11-140. In the event a judgment were rendered against

---

[8]Even receipt of significant state funding will not create an alter ego. Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977). The Supreme Court in Hopkins v. Clemson noted Clemson's receipt of an annual appropriation, but nevertheless held it was not an "alter ego" 31 S.Ct. at 658.

Clemson in a lawsuit, money from the Insurance Reserve Fund, would be available to pay it. The State Treasury would not be burdened. And, since Clemson also owns property in its own name, a judgment could be satisfied out of its funds or property without resorting to the State Treasury. As the Fourth Circuit has recently said:

> While many factors must be considered in determining whether an entity is the alter ego of the state, it is generally held that the most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded.

Ram Ditta, 822 F.2d at 457<br/>(citations omitted)

Thus, with respect to Clemson, the effect, if any on the State Treasury would be "ancillary" at most. See, Edleman v. Jordan, 415 U.S. 651, 667-68, 94 S.Ct. 1347 (1974) [holding an "ancillary" effect on the state treasury is not enough to invoke the protective cloak of the Eleventh Amendment].

Accordingly, pursuant to the statutory provisions affecting Clemson, there has been a substantial and real separation and independence created between the state and Clemson.[9] See, Kovats v. Rutgers, The State University, 822 F.2d at 1307-12 [Rutgers is not an alter ego even though a majority of its operating account is state appropriations and its property is exempt from local zoning and taxes,

---

[9]Indeed, anyone familiar with the Clemson sports program would immediately recognize that only out-of-state defense counsel would contend that Clemson and the State were alter egos.

where a majority of trustees was not appointed by the Governor, the university can sue and be sued in its own name, and it is a separate corporation holding certain assets separate from the state].

Put very simply, the Supreme Court has held Clemson University not to be the alter ego of the State. Kaiser Gypsum would have to produce very powerful arguments to persuade this Court to overrule the Supreme Court. Not only has it not done so, but the analysis above shows that there are no such arguments. Accordingly, this Court should follow the Supreme Court and hold that Clemson University is a citizen of South Carolina fully qualified to bring a suit within the diversity jurisdiction of this Court.[10]

---

[10]Kaiser Gypsum claims support from several opinion letters of the South Carolina Attorney General but, as with its principal argument, it has also misread those opinion letters by assuming that all agencies that have some state connection or state support are automatically alter egos of the State, and by ignoring the critical differences between states and their municipalities or political subdivisions. Properly read, the letters actually support Clemson's position. See e.g., S.C. Att'y Gen. Op. (Dec. 8, 1987) [S.C. Ports Authority is a state agency but not alter ego.]

Two of the four letters cited by Kaiser Gypsum refer to Clemson. In one, August 2, 1967, Clemson University is specifically declared by the Attorney General to be a "municipality," and thus eligible for funding under the Federal Water Pollution Control Act, 33 U.S.C. § 466e. In the other, September 8, 1980, Clemson University is listed along with other state-supported institutions as being "state agencies or political subdivisions [emphasis added]" eligible for funding of highway safety programs under 23 U.S.C. § 402. Other institutions receiving state "support" include the regional technical centers, which are quite likely not alter egos of the state either. See, Goss v. San Jacinto Junior College, 588 F.2d 96 (5th Cir. 1979).

2.  Clemson University is a Separate Municipal
    Corporation

By § 59-119-310, a municipal corporation was created ". . . known as Clemson University, . . ."  The general rule for determining citizenship of a political subdivision has been summarized as follows:

> A political subdivision of the state, unless it is simply the arm or alter ego of the state, is considered a citizen of such state for federal diversity jurisdiction purposes. Usually where a subdivision of a state has the status of a body corporate and politic, and given corporate powers, it is regarded as having an independent status from the state so as to permit diversity jurisdiction to be invoked in an action involving such subdivision.

32A Am.Jur.2d Federal Practice and Procedure § 1422, (emphasis added).

There is no question that municipal corporations, counties, and other political subdivisions of a state are considered citizens of their respective states and may create diversity jurisdiction in the federal courts.  See, 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3602 n.14; § 3623 n.22-25 (citing cases); Loeb v. Trustees of Columbia Township, 179 U.S. 472, 21 S.Ct. 174, 179-80 (1900); Cowles v. Mercer County, supra; Illinois v. City of Milwaukee, 92 S.Ct. at 1390; District of Columbia v. L. B. Smith, Inc., 474 F.Supp. 894 (D.D.C. 1979).

Accordingly, since Clemson University is a municipal corporation with a separate and distinct identity from the state, it is a citizen of the State of South

Carolina for diversity purposes.[11]  For this additional reason, diversity jurisdiction is proper.

B.  IF ONE CLASS REPRESENTATIVE IS A CITIZEN, THE PRESENCE OF AN ALTER EGO DOES NOT DESTROY DIVERSITY

Since Clemson is a citizen for diversity purposes, it is unnecessary to prolong the debate with an extensive analysis of the College of Charleston's circumstances.  Nevertheless, plaintiffs point out that it:  (1) gets a majority of its operating revenue from non-state appropriations, Affidavit of J. Floyd Tyler Exhibit 4; and (2) is insured by The Reserve Fund which would pay any judgments, not the state.  The Fourth Circuit has noted this second factor is the most significant of all.  Ram Ditta, 822 F.2d at 457.

_____

[11]The cases Kaiser Gypsum cites are easily distinguishable once analysis is substituted for labels.  Hughes-Bechtol, Inc. v. West Va. Bd. of Regents, 737 F.2d 540 (6th Cir.), cert denied 469 U.S. 1018 (1984), involved a statewide university board which the court found was "merely a conduit through which budget requests from the state universities, and corresponding appropriations from the West Virginia legislature flow."  The court found that all funds expended by the Board were state funds from the state treasury.  737 F.2d at 542.  Likewise, Ronwin v. Shapiro, 657 F.2d 1071 (9th Cir. 1981), a libel action against the University of Arizona Board of Regents, noted that the Board could not satisfy a judgment "in any way other than by turning to the state of Arizona."  657 F.2d at 1073.  Jacobs v. College of William and Mary, 495 F.Supp. 183, 189 (E.D.Va. 1980), aff'd. mem. 661 F.2d 922 (4th Cir. 1981), cert. denied 454 U.S. 1033 (1981), acknowledged the fact-specific nature of the inquiry.  The court found that William and Mary had been public since its inception, all its property was owned the State of Virginia, all judgments would be satisfied out of state funds, all its governing board was appointed by the state and funding was supplied by the state. 455 F.Supp. at 189-190.  The remaining cases Kaiser Gypsum cites similarly turn on different facts.

In any event, the presence of The College of Charleston, even if an "alter ego" of South Carolina, does not destroy diversity. Although an alter ego cannot create diversity because of its lack of citizenship, it cannot destroy diversity either (when it is co-plaintiff with a diverse plaintiff) because it is not a citizen of any of the states in which defendants are incorporated or headquartered. See, Laird v. Chrysler, 92 F.R.D. 473, 475 (D.Mass. 1981). Thus, there are no parties from the same state on both sides of the case - a condition needed to destroy diversity.

In Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396 (1978), cited by Kaiser Gypsum (at 2), the Court discussed the theory of diversity jurisdiction. It noted that "diversity jurisdiction is not to be available when any plaintiff is a citizen of the same state as any defendant". 98 S.Ct. at 2403. (emphasis in original) The Court recognized that diversity jurisdiction is offended when citizens of the same state appear on both sides of a case. Here, even if The College of Charleston is an alter ego of South Carolina (and, consequently, a citizen of no state), the offensive result of citizens of the same state on both sides of the case does not occur. Accordingly, at worst, under the circumstances here, the College of Charleston exerts no influence on diversity.

C.   ANY DEFECT IN A NAMED PLAINTIFF CAN BE CURED BY
     AMENDMENT

     Assuming arguendo that the College of Charleston is an alter ego of the state _and_ that an alter ego cannot remain as a named class representative, any such jurisdictional problem can be cured by dropping it as a named plaintiff.  Under Fed.R.Civ.P. 21, parties may be dropped or added by order of the court on motions on _sua sponte_.  A non-diverse party whose presence is not indispensible may be dismissed to achieve complete diversity. _See_, 7 Wright, Miller & Kane, _Federal Practice and Procedure_, § 1685 (1986).   _South Carolina Electric and Gas v. Ranger Construction Company_, 539 F.Supp. 578, 580 (D.S.C. 1982) [defendant dropped] _citing_ _Caperton v. Beatrice Pocahontas Coal Co._, 585 F.2d 683, 691-92 (4th Cir. 1978); _Allstate Insurance Company v. Lumbermen's Mutual Casualty Company_, 204 F.Supp. 83 (D.Conn. 1962). [Plaintiff allowed to withdraw to preserve diversity.]

D.   EVEN IF BOTH PLAINTIFFS WERE NOT "CITIZENS",
     DISMISSAL WOULD NOT BE THE SOLUTION

     Even in the unlikely event the Court were to hold that both named plaintiffs are alter egos of the state, it would make no sense to dismiss this action and start all over with a new plaintiff.  Rather, equity and judicial economy would best be served by allowing a new diverse plaintiff to intervene in the already existing action.  That new plaintiff would pursue the same causes of action against the same defendants.  The dropped

18

plaintiffs would simply become members of the class. It would serve no purpose to force a new plaintiff to file a separate lawsuit when the defendants are already on notice of the claims and the identity of the class. See International Woodworkers v. Chesapeake Bay Plywood Corp., 659 F.2d 1259 (4th Cir. 1981) [correct procedure for defect in class representative is to allow proper representative to come forward]; Dameron v. Sinai Hospital, 595 F.Supp. 1404 (D.Md. 1984), aff'd. in part 815 F.2d 975 (4th Cir. 1987) [same]. This solution is readily available here since a private college, Central Wesleyan, already has an independent class action pending and Kaiser Gypsum has itself argued that Central Wesleyan should have intervened in this case. See Opposition of Kaiser Gypsum Co. to Plaintiffs' Motion to Consolidate (July 31, 1987). Intervention by a new representative was the precise procedure used by Judge Hawkins in Runion v. U.S. Shelter, 98 F.R.D. 313 (D.S.C. 1983) to cure a defect in the named representative. He allowed a representative in one class action to replace an inadequate representative in a companion class action.

Moreover, with the leading college organizations in the country supporting the suit, an alternate representative could certainly be found if necessary. Thus, even assuming both class representatives were alter egos, Central Wesleyan or some other college could be allowed to intervene to continue the Clemson suit without interruption. See Atkins v. State Board of Education, 418 F.2d 874, 876 (4th Cir. 1969). Whittenberg v.

School District of Greenville, 607 F.Supp. 289, 303 (D.S.C. 1985); See also Fuller v. Volk, 351 F.2d 323 (3rd Cir. 1965); Hackner v. Guaranty Trust Co., 117 F.2d 95 (2nd Cir. 1941), cert. denied 313 U.S. 559 (1941). The addition of a new representative who had previously been a class member would relate back to the time of the original filing. Haas v. Pittsburgh National Bank, 526 F.2d 1083 (3rd Cir. 1975).

Consequently, Kaiser Gypsum's hope that the college class action will go away if it is able to disrupt the present representatives is simply unrealistic.

E.    THERE IS AN INDEPENDENT FEDERAL JURISDICTIONAL BASIS BECAUSE CERTAIN DEFENDANTS ARE "FOREIGN SOVEREIGNS" AND OTHER DEFENDANTS CAN BE INCLUDED AS PENDENT PARTIES

Kaiser Gypsum's motion attacks only one of the two jurisdictional bases of this suit - diversity. Because certain Canadian miners contend they are "foreign sovereigns" amenable to suit only in Federal District Court pursuant to 28 U.S.C. § 1330, 1603(a), an independent federal jurisdictional basis for this suit exists. Last month defendants Asbestos Corporation, Ltd., Bell Asbestos Mines, Ltd., Atlas Asbestos Co., Ltd., and Atlas-Turner, Inc. filed a consolidated motion to remove the State of South Carolina asbestos suit from Richland County to federal court, arguing that it was the only proper forum in which the action could proceed against them. (See Exhibit 2). It is at least incongruous for Kaiser Gypsum to argue that suit by South Carolina's "alter ego" should not be in federal court, when its

co-defendants have removed the suit by South Carolina itself to the federal court, contending it is the <u>only</u> proper forum.

The Foreign Service Immunity Act (F.S.I.A.), provides exclusive federal jurisdiction for actions against foreign states or corporations owned by foreign states. <u>Goar v. CPV</u>, 688 F.2d 417, 421 (5th Cir. 1982) ["Every appellate court that has considered whether 1330(a) is the sole source of federal jurisdiction in suits against corporations owned by foreign states has concluded that it is"]; <u>Arango v. Guzman Travel Advisors Corp.</u>, 761 F.2d 1527 (11th Cir.) <u>cert. denied</u> 474 U.S. 995, 106 S.Ct. 408 (1985) [Congress properly classified commercial entities owned by foreign governments in the same way as the governments themselves]; <u>Williams v. Shipping Corp. of India</u>, 653 F.2d 875, 881 (4th Cir. 1982) <u>cert. denied</u> 455 U.S. 982, 1025 S.Ct. 1490 (1982).

With federal jurisdiction existing over the foreign asbestos miners, the court may assert jurisdiction over the remaining defendants as pendent parties. In <u>Aldinger v. Howard</u>, 427 U.S. 1, 96 S.Ct. 2413 (1976) the Supreme Court held that a federal court can join a party not otherwise subject to federal jurisdiction if permitted by Article III and not prohibited by the statute conferring subject matter jurisdiction over the primary claim. Article III extends judicial power to controversies between a state and foreign states, and 28 U.S.C. 1330 contains no prohibition against joining pendent parties.

In fact, when the grant of federal jurisdiction is exclusive (as it is under the F.S.I.A.), Aldinger teaches courts should be hesitant in denying pendent party jurisdiction. 96 S.Ct. at 2422. See also, 13B Wright, Miller & Cooper Federal Civil Procedure § 3567.2, n.35. Otherwise, the strong judicial interest in resolving controversies in one forum would be destroyed. As another Supreme Court opinion stated ". . . Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." Owen Equipment Co., 98 S.Ct. at 2404. That interest is particularly strong here since the Canadian miners sold the majority of asbestos used by Kaiser Gypsum and the other manufacturing defendants in their products. Indeed, the manufacturers may eventually cross claim against the miners. Litigation is likely because of these sales.

A plaintiff, even an alter ego of the state, may sue a foreign state under 28 U.S.C. § 1330, and the court may exert pendent party jurisdiction over non-diverse defendants. See, Verlinden BV v. Central Bank of Nigeria, 461 U.S. 480, 103 S.Ct. 1962, 1969 (1983). ["The Act [F.S.I.A.] contains no indication of any limitation based upon the citizenship of the plaintiff".] Thus, assuming arguendo that Clemson and The College of Charleston are both alter egos of the state, this Court's jurisdiction would nevertheless be proper.

F.  KAISER GYPSUM'S MOTION TO DISMISS IS PRIMARILY A
    CHURNING EXERCISE SINCE THERE IS NO JURISDICTIONAL
    QUESTION ABOUT CENTRAL WESLEYAN COLLEGE, AND CLEMSON
    AND THE COLLEGE OF CHARLESTON COULD CLEARLY BE MEMBERS
    OF THE CENTRAL WESLEYAN CLASS.

    To understand the ultimate uselessness of Kaiser
Gypsum's motion, assume for a moment that it is all right and
plaintiffs are all wrong.  Thus, assuming that: (1) Clemson and
The College of Charleston are both alter egos of the state; (2)
no intervention or amendment of parties in Clemson were
permissible; (3) there is no foreign sovereign jurisdiction, and
(4) there can be no pendent jurisdiction over other defendants;
Kaiser Gypsum's motion to dismiss is nevertheless pointless.
There already exists a related class action filed by Central
Wesleyan College in which Clemson and The College of Charleston
can be class members.  Central Wesleyan College v. W.R. Grace &
Co., et al., C/A 2:87-1860-2 (D.S.C. filed July 17, 1987).

    No defendant has made a jurisdictional challenge to
Central Wesleyan's maintenance of the class action.  Central
Wesleyan is a private, religiously affiliated school incorporated
in South Carolina.  (See Exhibit 3).  Clemson and The College of
Charleston can be members of the Central Wesleyan class, since
all three schools are colleges or universities with an asbestos
abatement problem and covered by the class definition.  See
Complaint ¶ 8.  Thus, at the end of a long string of battle

victories, even if they occurred, Kaiser Gypsum would lose the war. Its motion is, indeed, a churning exercise.

IV

CONCLUSION

Kaiser Gypsum's motion to dismiss should be denied for any or all of the following reasons.

1. Clemson, a named plaintiff, is not an alter ego of the state.

2. Assuming arguendo that The College of Charleston is an alter ego, the action can continue based on the citizenship of Clemson.

3. Assuming arguendo that both named plaintiffs are alter egos, rather than dismiss the action, any defect in the parties plaintiff can be cured by intervention of a diverse plaintiff such as Central Wesleyan.

4. Assuming arguendo that both named plaintiffs are alter egos, they may still sue the Canadian miners (foreign sovereigns) in federal court and the remaining defendants may be included as pendent parties to bring the entire controversy before one forum.

Finally, even assuming the remote result that both named plaintiffs are alter egos and no federal jurisdictional basis exists, plaintiffs are members of the Central Wesleyan class and the Central Wesleyan class action may proceed with the

same claims as the Clemson and College of Charleston class action.

Accordingly, class plaintiffs respectfully request that this Court deny Kaiser Gypsum's motion to dismiss.

MOTLEY, LOADHOLT, RICHARDSON, & POOLE

Edward J. Westbrook
J. Anderson Berly, III
151 Meeting Street
P.O. Box 1137
Charleston, SC  29402

Daniel A. Speights
P.O. Box 685
Hampton, SC  29924

Cameron McGowan Currie
P.O. Box 7667
Columbia, SC  29202

Of Counsel:

Professor Arthur R. Miller
Harvard Law School
Langdell West 227
Cambridge, MA  02138

Herbert B. Newberg
Lippincott Building, Suite 200
227 S. 6th Street
Philadelphia, PA  19106

BY: _____

December  11 , 1987
Charleston, South Carolina.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel for defendants listed below have been served with a substituted copy of class plaintiffs' response to Kaiser Gypsum's motion to dismiss plaintiffs' class action by placing same for delivery through United States mail, postage prepaid this ____17____ day of December, 1987

Cameron M. Currie, Esq.
P.O. Box 7667
SC  29202

Daniel A. Speights, Esq.
304 Lee Avenue
P.O. Box 685
Hampton, SC  29924

R. Bruce Shaw, Esquire
Nelson, Mullins, Riley, Columbia,
   & Scarborough
P.O. Box 11070
Columbia, SC  29211

Joseph A. Rhodes, Jr., Esquire
Haynsworth, Baldwin, Miles,
   Johnson, Greaves & Edwards, P.A.
P.O. Box 10888
Greenville, SC  29603

P. Michael Duffy, Esquire
Morris, Duffy & Boone
141 East Bay Street
Charleston, SC  29401

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

CLEMSON UNIVERSITY and )
THE COLLEGE OF CHARLESTON )
on behalf of themselves and all ) C. A. No. 2: 86-2055-2
others similarly situated, )
                            )
              Plaintiffs, )
                            )
    vs.                     ) AFFIDAVIT
                            )
W. R. GRACE & CO., et al.,  )
                            )
              Defendants. )
_____ )

Jack N. Wilson, being first duly sworn upon oath, states as
follows:

1.   My name is Jack N. Wilson and I am the Associate Vice
President for Facilities, Planning and Management at Clemson
University.

2.   As a part of my job duties and responsibilities, I am
knowledgeable about the University's monetary funding and
appropriations.

3.   That Exhibit 1A, attached hereto, accurately reflects
Clemson University's statement of revenues for the years 1985,
1986, and 1987; that as can be seen from the statement, the State
of South Carolina has contributed 47%, 48%, and 46% respectively
of the total appropriations for the aforementioned years.

4.   That Exhibit 1B, attached hereto, accurately reflects
the State of South Carolina's anticipated appropriations for the
year 1987-88; that such appropriations are anticipated to amount
to 42% of Clemson's revenues for that time period.

EXHIBIT 1

That within information provided is based upon my personal knowledge and belief.

*Jack N. Wilson*
Jack N. Wilson

The foregoing was sworn to and acknowledged before me this 10th day of December , 1987 by Jack N. Wilson.

Notary Public - State of South Carolina

Sept 7, 1989 Expires

2

CLEMSON UNIVERSITY

Statement of Current Revenues

| | 1987 | 1986 | 1985 |
|---|---|---|---|
| Revenues: | | | |
| Tuition and fees | $ 29,979,180 | $ 27,269,681 | $ 25,660 |
| Federal appropriations | 10,355,051 | 10,071,330 | 10,937 |
| State and local appropriations | 93,674,716 | 92,576,696 | 84,634 |
| Federal grants and contracts | 10,001,054 | 8,521,943 | 8,795 |
| State grants and contracts | 1,217,811 | 1,475,132 | |
| Local grants and contracts | 41,346 | 15,104 | |
| Other grants and contracts | | | 9,581 |
| Private gifts, grants and contracts | 11,265,545 | 10,513,149 | |
| Endowment income | 327,242 | 320,402 | |
| Sales and services of educational departments | 1,484,720 | 1,525,410 | 1,462 |
| Sales and services of auxiliary enterprises | 36,244,325 | 34,923,873 | 31,826 |
| Other sources | 8,834,409 | 6,805,756 | 5,959 |
| Total current revenues | $203,425,399 | $194,018,476 | $ 178,854 |

* State and local appropriations %

1987 46%
1986 48%
1985 47%

EXHIBIT 1A



# Clemson University

## 1987-88 Total Revenue

Estimated Revenue — $227 million

EXHIBIT 1B